IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-2249-WJM-SKC

LISA NASSARDEEN-BUCKLEY, and
ISHMAIL NASSARDEEN-BUCKLEY,

    Plaintiffs,

v.

U.S. BANK, NATIONAL ASSOCIATION as Trustee for Truman 2016 SC6 Title Trust,
RUSHMORE LOAN MANAGEMENT SERVICES, and
JOHN DOES TRUSTS TBD,

    Defendants.

---

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

---

Plaintiffs Lisa and Ishmail Nassardeen-Buckley filed this action to prevent foreclosure on their home. The Defendants are the alleged holder of the note, U.S. Bank National Association ("U.S. Bank"), and the servicer, Rushmore Loan Management Services ("Rushmore") (together, "Defendants"). Currently before the Court is Plaintiffs' Emergency Request for Temporary Restraining Order ["TRO"] and Preliminary Injunction or Ex-Parte Temporary Restraining Order. (ECF No. 10.) The Court previously denied the TRO portion of this motion. (ECF No. 26.) For the reasons explained below, the Court also denies the remainder of the motion.

## I. BACKGROUND

### A. Allegations

The Court derives the following mostly from Plaintiffs' complaint (ECF No. 1) and the affidavit attached to that complaint (ECF No. 1-1). *See also* Fed. R. Civ. P. 10(c)

("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Plaintiffs purchased a home in Castle Rock, Colorado, in 2001. (ECF No. 1-1 at 1.) In 2007, they refinanced their home to draw on its equity. (*Id.* at 2.) This refinancing was through Washington Mutual. (ECF No. 1 ¶ 13.) Plaintiffs' monthly payment increased from $3,500 to $7,700, exclusive of property taxes. (ECF No. 1-1 at 2.) But, they say, "we were at an income level that this was not an issue to meet this monthly mortgage payment and we did so consistently [due to business profits] until 2016." (*Id.*) By that time, much of Plaintiffs' business had dried up, and Plaintiffs and their family members faced health challenges. (*Id.* at 2–4.) J.P. Morgan Chase held the note then, as successor-in-interest to Washington Mutual. (*Id.* at 3.)

Defendant Rushmore came into the picture "in early 2017," apparently as a new servicer of the loan. (*Id.* at 4.) Rushmore at first would not work with Plaintiffs to restructure, but after Plaintiffs filed bankruptcy in August 2017, Rushmore agreed to a plan through which Plaintiffs would resume payments in October 2017. (*Id.* at 4–5.) Plaintiffs characterize this plan as "a miss on the part of [their] Bankruptcy attorney," because they would not realize positive cash flow from new business contracts until the second quarter of 2018. (*Id.* at 5.) Plaintiffs and Rushmore discussed further restructuring in the summer of 2018, but Rushmore would not agree to Plaintiffs' terms. (*Id.* at 6.)

**B.     The Complaint**

Plaintiffs filed their *pro se* complaint on August 31, 2018. (ECF No. 1.) They allege eleven causes of action, which may be summarized as follows:

*Count 1.*  This is some sort of fraud claim that Plaintiffs obviously copied from the Internet, as demonstrated by its references to predatory lending by Merrill Lynch (an entity not otherwise mentioned in the complaint) and an ongoing foreclosure in Elbert County (Castle Rock is in Douglas County).  (*Id.* ¶¶ 23–32.)

*Count 2.*  This is a "fraud in the concealment" claim accusing Washington Mutual (described as a "Defendant" in this action) of predatory lending, *i.e.*, of misleading Plaintiffs into taking out too expensive a mortgage and/or failing to verify their income.  (*Id.* ¶¶ 33–39.)  This partially contradicts Plaintiffs' sworn statement that the 2007 refinance was financially viable at the time and for about nine years thereafter.

*Count 3.*  This is a "fraud in the inducement" claim based on some sort of intentional misrepresentation that Defendants have an interest in the property on which they may foreclose.  (*Id.* ¶¶ 40–47.)

*Count 4.*  This claim, dubbed "unconscionable contract," again accuses Washington Mutual of predatory lending.  It also contains incomprehensible allegations against Defendant U.S. Bank, such as a claim that U.S. Bank "knew or should have known that through a consciousness of innocence Plaintiff was at a special disadvantage when attempting to grant an alternate means of collection via the Security Instrument real property lien Mortgage to U.S. Bank, N.A."  (*Id.* ¶¶ 48–55.)

*Count 5.*  This claim is for breach of contract against Washington Mutual and J.P. Morgan Chase.  It again contains incomprehensible allegations against U.S. Bank, such as allegations about U.S. Bank selling its interest to Washington Mutual (which no longer exists).  (*Id.* ¶¶ 56–60.)

*Count 6.*  This is a breach of fiduciary duty claim, mostly with incomprehensible

allegations about U.S. Bank not really being a creditor, and somehow causing "a cloud on Plaintiff's superior claim to title." (*Id.* ¶¶ 61–66.)

*Count 7.* This is a quiet title claim, arguing that Defendants lack any legally enforceable claim on their home "construed and hypothecated as 'After Acquired Collateral' the Intangible Payment transferable record to the §1031 - Exchange." (*Id.* ¶¶ 67–73.)

*Count 8.* This is a slander of title claim, arguing that Defendants never perfected any rights through proper recordation. (*Id.* ¶¶ 74–82.)

*Count 9.* This is a declaratory judgment cause of action to declare that the Plaintiffs have the sole interest in their home. (*Id.* ¶¶ 83–85.)

*Count 10.* This is a cause of action labeled "CCPA," but it has nothing to do with the Colorado Consumer Protection Act. It goes on to quote what is purportedly language from 15 U.S.C. § 1461(g) about obligations to inform affected debtors when a mortgage is sold, but nothing like the quoted language actually appears in 15 U.S.C. § 1461. (*Id.* ¶¶ 86–88.)

*Count 11.* This is a cause of action for violation of "Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(A)." This regulation from the Consumer Financial Protection Bureau discusses loan servicers' duties when receiving a "loss mitigation application" from a mortgage debtor. Plaintiffs accuse Defendants of failing to properly evaluate their loss mitigation application, or in other words, their request to restructure the loan.

**C.      Subsequent Events**

Plaintiffs filed for a TRO and preliminary injunction on October 16, 2018, alleging that foreclosure was scheduled for the next day. (ECF No. 10 at 25.) At the time, this

4

case had been drawn directly to a magistrate judge. On October 24, 2018, the magistrate judge issued a minute order calling for reassignment to a district judge per D.C.COLO.LCivR 40.1(c)(2)(a), which prohibits direct assignment to a magistrate judge when a motion for injunctive relief is filed. (ECF No. 11.) The case was then drawn to Judge Wiley Y. Daniel. (ECF No. 12.) On October 25, 2018, Judge Daniel exercised his prerogative as a senior judge to have the case reassigned, and it was then drawn to the undersigned. (ECF Nos. 13–14.)

Understanding that foreclosure had been scheduled for October 17, the Court called for a status report from each side. Plaintiffs reported that the foreclosure took place as scheduled. (ECF No. 21 ¶ 4.) Plaintiffs also mentioned details of some sort of state-court action challenging the foreclosure. (*Id.* ¶¶ 4–8.) Defendants elaborated that the foreclosure sale had, indeed, taken place and that U.S. Bank purchased the property through that sale. (ECF No. 24 ¶ 3.) Defendants also noted at least two Douglas County District Court actions related to this dispute. (*Id.* ¶¶ 4–5.) In one of those actions, the Douglas County court "issued an order enjoining further action against the subject real property until such time as this Court takes up the matter of injunctive relief." (*Id.* ¶ 6.) In other words, the Douglas County court effectively granted the same relief that Plaintiffs were seeking through the TRO portion of the motion pending in this Court. Consequently, this Court denied the TRO request as moot and ordered further briefing on the matter of a preliminary injunction. (ECF No. 26.)

Having received that briefing, the Court is now prepared to rule. Because it is clear on this record that Plaintiffs' request fails as a matter of law, the Court needs no hearing.

## II. PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an extraordinary remedy; accordingly, the right to relief must be clear and unequivocal. *See, e.g.*, *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010). A movant must show: (1) a likelihood of success on the merits, (2) a threat of irreparable harm, which (3) outweighs any harm to the non-moving party, and (4) that the injunction would not adversely affect the public interest. *See, e.g.*, *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012).

## III. ANALYSIS

Plaintiffs' request for a preliminary injunction relies solely on their first six causes of action. (*See* ECF No. 10 at 15–25.) The Court finds that the request fails on the likelihood-of-success element, for several reasons.

First, most of these causes of action are actually directed at Washington Mutual, and perhaps J.P. Morgan Chase, neither of which is a defendant here. Plaintiffs include scattered assertions that U.S. Bank somehow participated in Washington Mutual's alleged predatory lending (*see* ECF No. 1 ¶¶ 35, 52), but nothing supports these allegations and it is not clear how they could be true—or in other words, it is not clear how U.S. Bank (or Rushmore) could have been involved in Washington Mutual's refinancing of Plaintiffs' home in 2007. Plaintiffs likely could not survive a Rule 12(b)(6) motion to dismiss on these issues, and are therefore not likely to succeed on these claims.

Second, to the extent Plaintiffs could hold Defendants liable for Washington Mutual's alleged misdeeds in 2007, Plaintiffs' own allegations show that their inability to pay their mortgage resulted from business reverses, not from Washington Mutual

qualifying them for a loan that they could not repay.  Indeed, Plaintiffs specifically *admit* that their debt service was sustainable for about nine years after the refinance.

Third, to the extent Plaintiffs mean to say that U.S. Bank failed to inform Plaintiffs of its alleged true status as something other than the real creditor, these allegations are essentially incomprehensible.  And, in any event, Plaintiffs claim that this was some sort of fraud, but they do not explain their reliance on any Defendant's alleged misrepresentations, much less do they plead reliance with particularity as required by Rule 9(b).

Fourth, to the extent Plaintiffs allege that Defendants did not record their interests properly, they do not explain how those alleged failures could lead to the outcome they seek, *i.e.*, ownership of their home, free and clear of all debt.  Plaintiffs admit that they received loan proceeds in exchange for a security interest on their home.  To wipe out the security interest and allow Plaintiffs to keep the loan proceeds (now represented by the home itself), solely due to alleged recordation errors, would be a drastic remedy indeed.  Plaintiffs cite no authority granting the Court power to provide such a remedy.

For all these reasons, Plaintiffs are not likely to succeed on any of their first six causes of action.

## IV.  CONCLUSION

For the reasons set forth above, the preliminary injunction portion of Plaintiffs' Emergency Request for Temporary Restraining Order and Preliminary Injunction or Ex-Parte Temporary Restraining Order (ECF No. 10) is DENIED.  No later than December 17, 2018 counsel shall contact the chambers of U.S. Magistrate Judge S. Kato Crews in order to schedule a prompt Scheduling Conference.

qualifying them for a loan that they could not repay.  Indeed, Plaintiffs specifically *admit* that their debt service was sustainable for about nine years after the refinance.

Third, to the extent Plaintiffs mean to say that U.S. Bank failed to inform Plaintiffs of its alleged true status as something other than the real creditor, these allegations are essentially incomprehensible.  And, in any event, Plaintiffs claim that this was some sort of fraud, but they do not explain their reliance on any Defendant's alleged misrepresentations, much less do they plead reliance with particularity as required by Rule 9(b).

Fourth, to the extent Plaintiffs allege that Defendants did not record their interests properly, they do not explain how those alleged failures could lead to the outcome they seek, *i.e.*, ownership of their home, free and clear of all debt.  Plaintiffs admit that they received loan proceeds in exchange for a security interest on their home.  To wipe out the security interest and allow Plaintiffs to keep the loan proceeds (now represented by the home itself), solely due to alleged recordation errors, would be a drastic remedy indeed.  Plaintiffs cite no authority granting the Court power to provide such a remedy.

For all these reasons, Plaintiffs are not likely to succeed on any of their first six causes of action.

## IV.  CONCLUSION

For the reasons set forth above, the preliminary injunction portion of Plaintiffs' Emergency Request for Temporary Restraining Order and Preliminary Injunction or Ex-Parte Temporary Restraining Order (ECF No. 10) is DENIED.  No later than December 17, 2018 counsel shall contact the chambers of U.S. Magistrate Judge S. Kato Crews in order to schedule a prompt Scheduling Conference.

Dated this 13th day of December, 2018.

BY THE COURT:

￼

William J. Martinez
United States District Judge